UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Roman N.,<br><br>            Petitioner,<br><br>v.<br><br>Donald J. Trump, *in his official capacity as President of the United States*; Kristi Noem, *in her capacity as Secretary of the United States Department of Homeland Security*; Todd M. Lyons, *in his official capacity as Acting Director of the United States Immigration and Customs Enforcement*; Pamela Bondi, *in their official capacity as Attorney General of the United States*; and David Easterwood, *in his official capacity as Acting Director, St. Paul Field Office, U.S. Immigration and Customs Enforcement*,<br><br>            Respondents. | Civ. No. 26-282 (JWB/DLM)<br><br><br><br>**ORDER ON<br>PETITION FOR WRIT OF<br>HABEAS CORPUS** |

---

Graham Blair Ojala-Barbour, Esq., and Sara Larson Glesne, Esq., Ojala-Barbour Law Firm, counsel for Petitioner.

Ana H. Voss, Esq., United States Attorney's Office, counsel for Respondents.

---

      This case concerns the limited authority Congress conferred in 8 U.S.C. § 1159(a) to take a refugee admitted under 8 U.S.C. § 1157 into custody for inspection and examination. The question is beyond the basic one of whether Respondents may inspect a refugee for purposes of adjustment of status. It is whether § 1159 authorizes continued physical detention where inspection has not begun, no timeline has been provided, and custody appears untethered from the statutory purpose for which it is permitted. On the

present record, it does not.

## BACKGROUND

Petitioner is a native and citizen of Russia. (*See* Doc. No. 1, Petition ¶ 3.) He was admitted to the United States as a refugee on October 11, 2023. (*Id.* ¶¶ 3, 5, 43.) On October 15, 2024, Petitioner filed an application to adjust his status to lawful permanent resident. (*Id.* ¶ 44.) He alleges he has complied with all processes and procedures associated with his refugee status, and that he has not violated any immigration or criminal statute. (*Id.* ¶¶ 3, 46.)

Applying to enter the country as a refugee is a "highly regulated process" involving multiple levels of security and biometrics screenings, interviews, and assessments involving multiple federal agencies such as the Department of Homeland Security ("DHS") and the Department of State. *See generally Pacito v. Trump*, 768 F. Supp. 3d 1199, 1211–13 (W.D. Wash. 2025).

Once a refugee has been physically present in the United States for at least a year, they must apply for adjustment of status. 8 U.S.C. § 1159(a). DHS or the Attorney General may adjust a refugee's status to lawfully admitted for permanent residence once the refugee (1) submits an application; (2) has been physically present in the United States as a refugee for at least one year; (3) falls under the definition of "refugee" under 8 U.S.C. § 1101(a)(42)(A), or is the spouse or child of someone who does; (4) is not firmly resettled in another country; and (5) is admissible as an immigrant under 8 U.S.C. § 1182(a) and § 1159(c).

On January 9, 2026, DHS, acting through U.S. Citizenship and Immigration

Services ("USCIS"), commenced an enforcement initiative in Minnesota directed at refugees who had not yet adjusted their status to lawful permanent residence. *See* Press Release, U.S. Citizenship & Immigr. Servs., DHS Launches Landmark USCIS Fraud Investigation in Minnesota (Jan. 9, 2026). The stated focus of the initiative is to "reexamin[e]" refugees in Minnesota "who have not yet been given lawful permanent resident status" by conducting "new background checks and intensive verification" of their refugee claims. *Id.*

Petitioner was arrested by Immigration and Customs Enforcement ("ICE") on January 13, 2026. (Petition ¶¶ 1, 5, 47.) As of the filing of the Petition, Petitioner was detained at Fort Snelling, Minnesota. (*Id.*)

## DISCUSSION

### I.   Legal Standard

A writ of habeas corpus may issue where a petitioner is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). The petitioner bears the burden of establishing, by a preponderance of the evidence, that the challenged detention lacks a lawful statutory basis. *See Aditya W. H. v. Trump*, 782 F. Supp. 3d 691, 703 (D. Minn. 2025) (collecting cases).

Immigration detention, like all civil detention, must rest on an express congressional grant of authority and must bear a reasonable relation to its statutory purpose. *Zadvydas v. Davis*, 533 U.S. 678, 687, 690 (2001) (quoting *Jackson v. Indiana*, 406 U.S. 715, 738 (1972)). Section 2241 confers jurisdiction to determine whether the Executive Branch has statutory authority to detain an individual, including in the

3

immigration context. *See id.* 687–88.

## II.   Analysis

Petitioner challenges only the lawfulness of his detention under federal law. He does not contest any removal order, the conduct of removal proceedings, or the execution of removal. Therefore, jurisdiction lies under 28 U.S.C. § 2241 to review the legal basis for custody. *See, e.g.*, *Mohammed H. v. Trump*, 786 F. Supp. 3d 1149, 1154–55 (D. Minn. 2025). Because the Petition is not directed at removal, statutory channeling provisions do not apply either. *See Jennings v. Rodriguez*, 138 S. Ct. 830, 841 (2018).

In habeas review, the question is whether the detention is authorized by statute and consistent with constitutional limits. That determination remains for the Article III courts. *See Zadvydas*, 533 U.S. at 688 ("[T]he habeas statute … does not require courts to defer to the Attorney General's interpretation of the statute. Rather, it requires the courts to determine whether the detention is lawful.").

Respondents point out that Petitioner entered the country as a refugee over a year ago and that his status had not been adjusted to lawful permanent resident at the time of his arrest. Thus, according to Respondents, § 1159(a) authorizes Petitioner's detention.

8 U.S.C. § 1159(a) states that an individual admitted as a refugee who has been physically present in the United States for over one year "shall, at the end of such year period, return or be returned to the custody of the Department of Homeland Security for inspection and examination for admission to the United States as an immigrant in accordance with the provisions of sections 1225, 1229a, and 1231 of this title."

Section 1159(a) authorizes a refugee who has been physically present in the United States for at least one year to "return or be returned to the custody of the Department of Homeland Security for inspection and examination for admission . . . as an immigrant[.]" The statute thus permits custody for a specific and limited function: to allow DHS to conduct the inspection necessary to adjudicate adjustment of status under § 1159(a)(2).

Nothing in § 1159 authorizes detention untethered from that function. Nor does the statute mandate detention, prescribe a minimum duration of custody, or reclassify an admitted refugee as an "arriving alien" or "applicant for admission." The cross-reference to § 1225 provides the procedural mechanics of inspection, not an independent or mandatory detention regime. Custody under § 1159(a) is therefore lawful only to the extent it serves the inspection and examination contemplated by the statute.

The implementing regulations confirm this limited role. *See* 8 C.F.R. § 209.1(b), (d). A refugee must submit an adjustment application and biometrics after one year of presence, and USCIS determines whether an interview or further examination is necessary. *Id*. The regulations do not require detention, and they do not contemplate prolonged custody in the absence of the statutory inspection.

Respondents do not challenge Petitioner's allegation that he applied to adjust his status more than a year ago—in October 2024 once he was statutorily eligible to do so—and was awaiting a decision when he was suddenly arrested. Instead, they claim that Petitioner's detention is based on his "fail[ure] to acquire permanent resident status within one year." (Doc. No. 5 at 1.) Such a basis for detention is illogical given that

5

refugees are not eligible to apply for adjustment of status until they have "been physically present in the United States *for at least one year*." 8 U.S.C. § 1159(a)(1)(B) (emphasis added).

Respondents' reassurances that Petitioner's detention "is not indefinite" and that his "inspection will occur in due course" also cannot justify detention. (Doc. No. 5 at 2–3.) "[W]ill occur in due course" is on its face vague and indefinite. Where inspection has not begun, no officer has been assigned, and no timeline has been provided, continued detention ceases to serve the only purpose for which § 1159 permits custody. Habeas review requires more than assurances of future action; the statute must authorize detention now, not at some indefinite point in the future.

Generally, when "unadjusted" refugees are arrested for an inspection under § 1159, ICE must determine whether to release the individual or issue a Notice to Appear indicating the removal charges "no later than 48 hours after the arrest." Policy Memorandum, U.S. Citizenship & Immigr. Servs., Requests for Evidence and Notices of Intent to Deny, PM-11039.1, at 2 (May 10, 2010).; *see also* 8 U.S.C. § 1357(a)(2); 8 C.F.R. § 287.3(d). Petitioner has already been in custody under § 1159 for more than 48 hours.

The analysis here is straightforward. Petitioner was admitted into the country as a refugee after undergoing an intensive, multi-step vetting process conducted by Respondents. After residing in the United States for more than a year, he applied for adjustment of status as required by and pursuant to § 1159(a) and 8 C.F.R. § 209.1(b). While waiting for Respondents to review his application, Respondents arrested and

detained Petitioner because he had not yet been granted lawful permanent resident status; in other words, Petitioner is detained because Respondents have not yet processed his application. Respondents have submitted no evidence showing an inspection under § 1159 has or will occur or whether the purpose of the purported inspection is to determine admissibility.

On the present record, Respondents have not shown that Petitioner's detention is serving the inspection and examination function authorized by § 1159(a). Where Congress has authorized detention for a limited statutory purpose, continued custody is lawful only so long as that purpose is being carried out within a reasonable period. Respondents have neither initiated inspection nor made any showing that detention is necessary to accomplish it.

The appropriate habeas remedy is conditional relief. Respondents shall either (1) commence and complete inspection and examination pursuant to § 1159(a) within seven days of this Order, or (2) immediately release Petitioner from custody. Continued detention beyond that period is not authorized. *See Munaf v. Geren*, 553 U.S. 674, 693 (2008) (describing release as the "typical remedy" for "unlawful executive detention"). Petitioner's other habeas claims are not reached.

## ORDER

Based on the foregoing, and on all the files, records, and proceedings in this case, **IT IS HEREBY ORDERED** that:

1. The Petition for a Writ of Habeas Corpus (Doc. No. 1) is **GRANTED IN PART**.

2. Respondents shall, within seven (7) days of this Order, either:

    a. Complete inspection and examination of Petitioner pursuant to 8 U.S.C. § 1159(a), and file a notice confirming that inspection has been completed, identifying the outcome, and stating whether Respondents contend that continued detention is authorized on a specified lawful basis; or

    b. Immediately release Petitioner from custody in Minnesota, and file a notice confirming the date, time, and location of release.

3. Pending compliance with this Order, Respondents shall not transfer or remove Petitioner from this District. If Petitioner has been transferred outside the District of Minnesota, Respondents shall immediately return Petition to this District, file a notice confirming the date and time of return, and complete the requirements of the preceding paragraph within seven (7) days of Petitioner's return. Under either circumstance, Petitioner has the right to have counsel attend their inspection.

4. Nothing in this Order adjudicates the merits of Petitioner's adjustment application or removal proceedings, if any.

5. The relief ordered here is intended to ensure that habeas review is meaningful. If Petitioner is released pursuant to this Order, Respondents may not re-detain Petitioner on the same factual record and under the same statutory theory rejected herein, absent materially changed circumstances or a different and lawful basis for custody. Nothing in this Order precludes Respondents from taking lawful action supported by new fact or distinct statutory authority.

6. Petitioner's other claims are not reached.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Date: January 17, 2026                              *s/ Jerry W. Blackwell*
                                                    JERRY W. BLACKWELL
                                                    United States District Judge